UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

KIRSTEN BRANCAZIO,

      Plaintiff,

      v.                              CASE NO. 2:19-CV-694-FtM-MAP

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

                                  /

## ORDER

This is an appeal of the administrative denial of social security income benefits (SSI), disability insurance benefits (DIB), and period of disability benefits.[1]  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff argues the administrative law judge (ALJ) erred in evaluating the opinions of Dr. Kandel, her treating physician, and Dr. Rectanus, her treating psychologist.  After considering the parties' memoranda (doc. 23) and the administrative record, I find the Commissioner's decision is not supported by substantial evidence.  I remand.

*A.    Background*

Plaintiff Kirsten Brancazio, born on April 5, 1970, was 46 years old on her alleged onset date of September 16, 2016.  After a car accident in the parking lot of her workplace, she claims disability due to neck injuries, panic attacks, insomnia, anxiety, headaches, PTSD, back pain, and shoulder pain.  Prior to this accident, Plaintiff worked as a mortgage loan processor, a customer service representative, and most recently as an automobile salesman at a Lexis dealership (R. 88-89).  At the administrative hearing on April 19, 2018, Plaintiff testified she lives in a carriage home with a roommate and shares custody of her minor son with her ex-husband (R. 61-62).  She testified

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

that her only source of income is food stamps (R. 63).  She underwent cervical fusion surgery in

August 2017, and testified that her worst impairments were neck pain, panic attacks, and migraines

(R. 64).

Following the administrative hearing, the ALJ found that Plaintiff suffers from the severe

impairments of status-post cervical fusion at C5-C6, obsessive-compulsive disorder, panic attacks,

and headaches (R. 18).  However, the ALJ determined that Plaintiff is not disabled, because she

retains the RFC to perform a full range of sedentary work as follows:

> … the claimant can lift and carry a maximum of 10 pounds, stand and walk for a
> total of 6 hours in an 8 hour workday, and sit for a total of 6 hours in an 8 hour
> workday.  Claimant can never climb ladders, ropes, and scaffolds.  Claimant can
> only occasionally climb ramps and stairs.  Claimant's ability to balance is
> unlimited. Claimant can frequently stoop, kneel, and crouch.  Claimant can never
> crawl.  Claimant should avoid concentrated exposure to wetness. Claimant should
> avoid workplace hazards such as unprotected heights and unshielded rotating
> machinery.  Claimant is limited to simple, routine, repetitive tasks.  Claimant can
> have frequent interaction with supervisors, coworkers, and the public.

(R. 19).  The ALJ concluded that, with this RFC, Plaintiff cannot perform her past work, but can

work as a document prepper, call out operator, and return clerk (R. 25).  Plaintiff, after exhausting

her administrative remedies, filed this action.

> B.      *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months."  *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "'physical or

mental impairment' is an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

techniques."  *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct

law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C.  Discussion

#### 1.  treating psychologist's opinions

Plaintiff's second argument, that the ALJ erred in evaluating the opinions of treating psychologist Earl Rectanus, requires remand and I address it first.  Specifically, she questions the ALJ's finding that Dr. Rectanus's opinions are unsupported by his treatment notes as well as his decision to assign more weight to the opinions of the state agency psychological consultant.  And she asserts the ALJ erred by failing to weigh Dr. Rectanus's opinions in accordance with the applicable regulations and relatedly erred in formulating his residual functional capacity (RFC).  I agree.

Medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (*quoting* 20 C.F.R. § 404.1527(a)(2)).  A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate the reasons for doing so." *Winschel*, 631 F.3d at 1179 (*quoting Phillips v. Barnhart*, 357

at 1240 n.8).  Additionally, the ALJ must state the weight given to different medical opinions and the reasons therefor.  *Id*.  Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Specifically, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. § 404.1527(c)(1-5).

On a fill-in-the-blank form completed on March 18, 2018, Dr. Rectanus indicated that Plaintiff was markedly limited in her ability to socially interact with others (R. 757).  Specifically, Dr. Rectanus found Plaintiff markedly limited in her ability to accept instruction from or respond appropriately to criticism from a supervisor or superior, her ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes, her ability to respond appropriately to co-workers or peers, and her ability to relate to general public and maintain socially appropriate behavior (R. 757-758).  Dr. Rectanus also opined that Plaintiff has marked limitations in several areas pertaining to sustaining concentration, persistence and pace (R. 758), and opined that she has extreme limitations in her ability to perform at production levels expected by most employers (R. 759).  Dr. Rectanus opined Plaintiff has mainly moderate to marked limitations in adaptation, but has extreme limitations in her ability to behave predictably, reliably, and in an emotionally stable manner and her ability to tolerate customary work pressures (R. 759).  At the bottom of the form, Dr. Rectanus added a handwritten note explaining why such limitations were needed.  He stated that Plaintiff "is subject to unpredictable panic attacks, is agoraphobic, relies on a support animal, and conducts minimal driving" (R. 760).  He also indicated Plaintiff's impairments have lasted or are expected to last twelve months or more and that her condition is likely to deteriorate if she is placed under stress (R. 760).

In addressing these opinions and assigning them little weight, the ALJ explained "it [sic] is merely a handwritten response to a preformatted checklist and Dr. Rectanus did not provide explanation or reference to any specific medical treatment records to support the marked to extreme limitations indicated. Additionally, the marked to extreme limitations indicated are inconsistent with the medical record which shows largely unremarkable mental status examinations but for mood abnormalities and the claimant retained the ability to drive as needed" (R. 23-24). I cannot conclude that these reasons amount to good cause. Dr. Rectanus's psychotherapy notes are consistent with his handwritten explanation on the form and provide support for the limitations. Plaintiff first presented to Dr. Rectanus in November 2016 following a hospital admission for chest pains and an ultimate diagnosis of panic attacks. She reported insomnia and flashbacks, and a fear of driving. Dr. Rectanus prescribed antidepressant medication and recommended psychotherapy (R. 434). Unfortunately, Dr, Rectanus's treatment notes describe continuing panic attacks, sometimes resulting in emergency room visits and causing her to stay home as much as possible. Although Plaintiff's panic attacks subsided somewhat by December 2016, she continued to experience generalized anxiety and by February 2017 her panic attacks returned. While the ALJ's notation that mental status exams were "normal" is accurate, Plaintiff and her treating providers (Kandel and Rectanus) consistently document her panic attacks, agoraphobia, and fear of driving during the relevant time frame. On April 17, 2017, Dr. Rectanus indicated Plaintiff "has been coping independently with residual panic attacks, and none of these have been severe enough to compel ER visit. The patient has not been leaving the house, however, and her agoraphobic responses, appear to be increasing" (R. 657). In June 2017, Dr. Rectanus described Plaintiff as "more emotionally stable, with about two panic attacks per week, that she is managing in adequate fashion, although with very limited activity out of the home" (R. 654). Dr. Rectanus's September 2017 office note indicated:

6

Patient seen for individual psychotherapy for PTSD from MVA.  Patient reviewed current coping and responded well to review, reinforcement, and recommendations.  Cognitive psychotherapy for anxiety conducted with good effect in session.  Patient has been coping with recovery from spinal surgery, which appears to have been helpful.  She has had subsequent panic attacks, and has even driven to the hospital, but was able to sit and wait in her car for the panic attack to pass, as she did not want to incur another medical bill if her anxiety could pass without going inside.  The patient has continued to avoid all unnecessary driving and prefers to stay home.  Therapy again focused on the long-term problems associated with not increasing her desensitization practice, but in light of her ongoing panic attacks, this will have to be accommodated at the present time.

(R. 653).

Plaintiff continued with psychotherapy treatment for PTSD from her motor vehicle accident with Dr. Rectanus in 2017 and the beginning of 2018 (R. 731-732). After becoming uninsured, in January 2018 she began receiving mental health treatment with a psychiatrist and nurse practitioner at Elite DNA Therapy.  Records indicate she reported experiencing panic attacks at night and two to three times a week (R. 719).  She was diagnosed with panic disorder, ADHD, major depressive disorder, generalized anxiety disorder, and insomnia; prescribed supportive therapy, psycho-education; and medications adjusted to meet her needs (R. 720).  Plaintiff's Function Report reinforces this medical evidence.  In it, Plaintiff described why she does not drive: "I can drive short distances.  All my medical providers are within 2-3 miles from home. I can reach several destinations without driving on a busy road by using frontage roads and parking lots near my home. My domestic partner almost always drives me" (R. 266).  She does not "really talk to anyone aside from my domestic partner and son. I don't want to talk about my accidents or injuries so I avoid people.  I am often irritable from pain or side effects of meds. I sued to enjoy social situations and spending time with friends but I now have no positive input.  I am embarrassed about my situation and fear having panic attacks in public" (R 268).  When asked about her ability to deal with stress, Plaintiff indicated that she is "very afraid to be in the car. I am afraid to be alone or go out due to serious panic attacks.  I am afraid I am dying when I have them and my son will have no Mom" (R. 269).

7

In his decision, the ALJ discussed Plaintiff's "nearly ongoing difficulty with panic and going to the ER parking lot" (R. 23) but noted she "retained the ability to drive as needed" (R. 24). Ultimately, the ALJ concluded that the treatment records and the fact that none of her providers had forbidden her from driving despite her subjective reports of unpredictable and severe daily panic attacks suggest that she is not as limited as she alleged (R. 23). But later in his decision, when he assigned little weight to the state agency consultant's finding of no severe mental impairments, the ALJ's stated that "evidence received at the hearing level showed the claimant to be more limited" (R. 24). The ALJ explained: "The opinion of the State agency physical and psychological consultants finding the claimant capable of less than the full range of work at the light exertional level are given some weight as the physical and psychological limitations indicated are largely consistent with the record as a whole however evidence obtained at the hearing level showed the claimant to have different limitations" (R. 24).[2] These statements are confusing and irreconcilable. Essentially, the ALJ swiftly characterized Dr. Rectanus's March 2018 marked to extreme limitations as inconsistent with the medical evidence but assigned "some weight" to the state agency psychologist's opinions, citing to hearing level evidence that showed Plaintiff more

---

[2] The ALJ referred to Exhibit 4A, the Reconsideration level disability determination dated May 11, 2017. The mental residual functional capacity assessment (MRFC) signed by Madelyn Miranda DeCollibus, Psy.D. indicates Plaintiff is limited in sustaining concentration and persistence, including moderate limitations in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods (R. 139-140). She also opined that Plaintiff is moderately limited in her ability to interact with the general public, and her ability to accept instructions and respond appropriately to criticism from supervisors (R. 140). DeCollibus also indicated Plaintiff has adaptation limitations including moderate limitation in her ability to respond appropriately to changes at work, and may have difficulty coping with stress of rapid changes in performance environment secondary to anxiety and may prefer repetitive tasks as a result (R. 140-141). She provided an additional explanation for her limitations: The claimant retains the ability to mentally perform at the level cited and discussed in this MRFC. Claimant can be expected to perform simple and repetitive tasks in a limited work environment and to meet the basic mental demands of work on a sustained basis despite any limitations resulting from the identified MDIs (R. 140-141).

limited than she had been at the agency-level review in May 2017 (R. 24). Against this backdrop, I cannot conclude the decision is supported by substantial evidence.

It is undisputed that Dr. Rectanus is a licensed psychologist who treated Plaintiff for at least sixteen months (beginning November 2016 through the time the ALJ's hearing). And he is the only treating doctor who has submitted opinions. His opinions are consistent with the bulk of other evidence in the file, including records from treating neurologist Dr. Kandel who documented Plaintiff's anxiety, PTSD, and panic attacks; and the treating psychiatrist and nurse practitioner at Elite DNA Therapy Services (a Medicaid clinic where Plaintiff began receiving care in January 2018 after losing her health insurance) who diagnosed panic disorder, ADHD, major depressive disorder, generalized anxiety disorder, and insomnia. Admittedly, an "ALJ is not required to accept the opinion of a treating doctor, even one with expert credentials, if the ALJ finds that the opinion is not supported by the doctor's own records or the record as a whole." *Kent v. Acting Comm'r of Soc. Sec. Admin.*, 651 F. App'x 964, 967-68 (11th Cir. 2016). And, although there is truth to ALJ's notation that Plaintiff's mental status examinations were "largely unremarkable" the records overall depict a young lady diagnosed with generalized anxiety disorder and PTSD; prescribed Xanax (for anxiety, panic disorder), Zoloft (anxiety), mirtazapine (Remeron) (an antidepressant for insomnia), venlafaxine ER (Effexor) (an antidepressant for generalized anxiety disorder), and dextroamphetamine amphetamine (ADHD) (R. 247, 720-721); and who simultaneously experienced a cervical spine injury that required surgical intervention.[3] The ALJ

---

[3] In assigning little weight to Dr. Rectanus's opinions, the ALJ seems to focus on the lack of treatment records and largely unremarkable mental status examinations. Dr. Rectanus provided support for the limitations he imposed: Plaintiff experiences unpredictable panic attacks, is agoraphobic and relies on a support animal, but the ALJ found them insufficient. And his office visit notes document clearly and consistently document Plaintiff's subjective complaints of extreme anxiety and panic attacks, and the psychotherapy, medications, and desensitization program used to reduce symptomatology. While the Eleventh Circuit has not addressed it, other courts have recognized that "[t]he practice of psychology is necessarily dependent at least in part on patient subjective statements." … "A psychological opinion need not be based on solely

rejected the treating psychologist's opinions and confusingly addressed the opinions of the state agency non-examining psychologist who reviewed the file in May 2017 (eight months after the alleged onset date and long before the hearing level evidence that the ALJ described as showing Plaintiff to be more limited).  Accordingly, I conclude the ALJ's decision finding Plaintiff not disabled is not supported by substantial evidence.[4]  Remand is needed.

2.  *treating physician's opinions*

In light of the remand, I need not address Plaintiff's remaining arguments.  *See Jackson v. Bowen*, 810 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review the other issues raised).  However, one issue in particular deserves attention. Plaintiff asserts the ALJ erred by failing to weigh certain "opinions" of her treating neurologist, Dr. Kandel.  These "opinions," set forth by the doctor at the bottom of each of his office visit notes, were titled "Care Plan" and "Patient Instruction" and set forth information about such topics as "Cervical Radiculopathy," "Headaches," "Neck Pain,"   "Sensory Disorders/ Paresthesias," "Exercise: A Healthy Habit," "Headaches and Mind-Body Therapy," and "Neck Care" (R. 461-462; 467-468; 475-476; 481-483; 489-490; 496-498; 503-505; 510-512; 517-519, 525-527). Plaintiff complains that the ALJ erred by failing to consider the limitations set forth in the Care

---

objective tests; those findings may rest either on observed signs and symptoms or on psychological tests."  *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759 (10th Cir. 2005) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). "When mental illness is the basis of a disability claim, clinical and laboratory data may consist of diagnostic and psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation." *Blankenship v. Bowen,* 874 F.2d 1116, 1121 (6th Cir. 1989).

[4] Of course, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence.  *See* 20 C.F.R. § 404.1546(c). As already discussed, this Court may not re-weigh the evidence and reach its own conclusions about a claimant's RFC. *See Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir.2004).

Plans and Patient Instructions.  And she maintains the ALJ should have weighed Dr. Kandel's "opinions" set forth in them.  I cannot agree.  Instead, I side with the ALJ and find these Care Plans and Patient Instructions are not medical opinions and the ALJ did not need to specifically weigh them.

        *D.*     *Conclusion*

For the reasons stated above, it is ORDERED:

    (1) The ALJ's decision is REVERSED, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Order; and

    (2) The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE    and    ORDERED    in    Tampa,    Florida    on    July    10,    2020.

Mark A. Pizzo

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE